Case number 221115 Peter Kanefsky et al. v. Ford Motor Company General Retirement Plan Argument not to exceed 15 minutes per side Mr. Lawrence Breskin you may proceed for the hearing. Good morning your honors I'm Lawrence Breskin representing the appellant plaintiff Peter Kanefsky. I would like to reserve three minutes for rebuttal. This is a pension case. Peter Kanefsky brings this action to reverse the pension plan's decision to reduce his benefits catastrophically by 69% or $4,300 per month for two and a half years. We just have your complaint I guess but is your theory that Ford just made a mistake or there's something more going on here? We don't really know what happened other than Ford's brief description that they entered an incorrect database but our theory is that making a mistake which rises to gross negligence would be sufficient and that the fact that it was calculated four times by four different people, the Ford department, an outside contractor doing a hand calculation not a computer calculation, raising questions about how the entry of a database into a computer could affect that, calculated again in order to present to the Board of Trustees to approve the benefits and finally calculated again two months after the benefits had started, will rise to gross negligence. You haven't had discovery, I recognize, but your theory is basically it was a mistake. It was a mistake that was repeated enough that it's gross negligence but there's no allegation that there was something more going on. There was some animus towards your client or something, I don't know, a broad practice across the company to try to deny retirees certain benefits. No, that's correct. Can I ask you another question? I don't know, is your client's age in the record, or his age as of 2019? Because I think you must know it and I think Ford must know it, but I don't know, is it in the record anywhere? One of your theories was that he was looking for a job. He was. We don't know how old he was. I believe he was 58, but I'm not certain of that. That's not in the record anywhere, right? Well, it would be in the record on the benefit sheets because I'm quite certain that it listed the facts on which the benefit was calculated, which would show his date of birth. That was attached to your complaint? No, but it was considered by the court because those documents were referenced repeatedly in the complaint. And your client had worked for Ford for something like 39 years, correct?  So if he were 18 when he started, which would be likely the earliest, he would be at least 57, if my math is correct. I think that's the correct range, yes. So the problem, you're seeking equitable estoppel, and we have cases that give, this Blumpker case gives an eight-factor test. One factor is, was Ford, the party to be estopped, aware of the true facts here? And my understanding from the allegations in the complaint is that Ford did not realize until it told you, oh, we've been paying you too much. And the reason why they were paying you too much, they say, is because they counted your client's years in the United Kingdom as well as the years in the U.S., whereas he should be getting one pension for the U.K. years and one pension for the U.S. years. So it was, in effect, double-counting the U.K. years. Am I correct in my understanding of all of this, or tell me where I'm wrong? Well, yes, on the calculation, you calculate his American pension, and then you subtract, for the whole 39 years he worked, and then you subtract the U.K. pension. And Ford had not been doing that for the two years when they say they overpaid your client, and then they suddenly say, after the four calculations that you've mentioned, they suddenly say, oops, we realize we shouldn't have been paying you. We should have made this deduction. But Ford does not point to any fact which they did not know. They only point to the conclusion that the amount they calculated is incorrect. And we know from Blumker and Paul, which are the two cases which run through the decision of the district court, and Blumker, of course, is the granddaddy of equitable estoppel in the Sixth Circuit for pension cases, we know from those cases that it was the exact same situation. The employer or the pension plan was aware of all the facts, except they didn't realize they had miscalculated things until two years later when they discovered that the amounts weren't correct. So in Blumker, knowing the true facts didn't include knowing that a mistake had been made. How did you reconcile? So ostensibly on the face of our eight-factor test, the second factor is awareness of the true facts. But I then think we have case law interpreting that element to mean intent, which I would assume you know it is a mistake, or gross negligence. And so how would gross negligence combine with awareness? It seems to me that if we're saying gross negligence is enough to mean awareness of the true facts, then that can't possibly mean that you know of the mistake, because if you know of the mistake, then it wouldn't be negligence. It would be like knowledge.  So it can't be the ultimate. When you think about awareness of the true facts, it can't be the ultimate knowledge of the mistake. Otherwise, the gross negligence would have no meaning. It would be deliberate intent to defraud, basically.  What in your complaint shows that you're alleging gross negligence? The facts that the third element can be shown by two paths. And the second path is by conduct by the pension plan, which reasonably causes the participant to understand that he can rely on the information. The statements which were made by Ford in the packet, statements like this is all the information you need to make the best decision, this is an important decision you're making, are things which were said which could have no other reason except to instill confidence that you could rely upon the information which you're being given. When in fact, they did not use the care which is necessary through four calculations, either repeatedly making as a mistake, or on the other hand, ignoring that there was a difference. All you have to show is an intent that you, or circumstances suggesting that you could rely on their statements. That's where the rubber hits the road. So you're saying that an intent on the party to be stopped, that you will rely is enough, but your friend on the other side is suggesting that they need to have a more specific intent, that you actually take a specific action like in Paul, they wanted the people to retire. I guess I'll tell you what, I think our case law is ambiguous on which of those standards is correct. The statute uses a generic term, equitable. The Supreme Court has told us we need to interpret that against background legal principles. So what is your best argument for why the general intent to rely would be sufficient under traditional equitable estoppel principles? That's, in my view, the appropriate question to ask on how the district court resolved this case is, what would the common law treatises, I guess it's not common law because it's equity, the traditional equity treatises, say on what would be the specific element of estoppel here? Would it be the party to be estopped has to have an intent that you actually take a specific action? Or would it be the party to be estopped just knows generally that you will rely on whatever statement that they are saying? Do you see my point? What is the traditional law on this? That's the key point in my mind. Well, the traditional law is certainly that there is no need to show an intent to deceive. I got that, but that's the second element. That would be gross negligence. That's fine. The third element is you say it's just an intent that the party receiving the statement can rely on the statement. Your friends on the other side said, no, it's got to be an intent that you will take a specific action like in Paul. What's the best treatise, best case for us to rely on on what the traditional principle is for equitable estoppel? Nothing in equitable estoppel. The best case I think is the Hoard case. It's a very old case which you're asking about the general nature of equity which has been around forever. But that case clearly says that there doesn't have to be a specific intent for the party who acted to be affected. It's simply enough that there was an intent that the statements be relied upon. And in this case, there was plenty of evidence to make Konefsky believe that he had the right to rule. What do you do with disclaimers though? Disclaimers that say these are just estimates and we reserve the right to? First of all, you rely upon estimates all the time when there is no other option. The plan has stated that Konefsky could not have calculated his own benefits. He either had a choice of making the decision with no information at all or relying upon estimates. He took the risk that there was an estimating error. But this is not an estimating error. There is no allegation that the error was part of the estimating process. This was a calculation error. It was a fundamental. So it was beyond the risk which. It was a fundamental error on the part of Ford to include the years and earnings in the UK in calculating the US pension. Correct. But shouldn't your client have realized that when comparing the amount that he received on the UK pension against the amount he was receiving mistakenly on the US pension? No. Because he couldn't calculate the value of his benefits. And he was not told the amount of his full 39 years and then showed that nothing from the UK had been subtracted. He was just given the conclusion. This is the amount you're going to get. He didn't know the underneath calculation that there was something absent in it. The difference between the two pensions is explainable by the UK pension was for the first 19, 20 years of his employment, he was paid substantially less during that period. Also, the UK pension is designed to fit into a different social security system, a system that provides health care and other benefits which may not be available in the US. I don't know what those are, but neither does Peter Konevsky, so that the difference between his UK pension and his American pension, just because they're about 50-50, 19 years or 20 years, doesn't mean they're going to end up being the same amount. Can I just go back to Judge Murphy's questions? I mean, this is all an equitable analysis, and we're trying to figure out where to draw the line. In the last factor, the eighth factor, requires extraordinary circumstances in which the balance of equities strongly favor the application of estoppel, so our test is not just favor, it's strongly favor. How does that align with the questions that Judge Murphy was asking about? Is it just reliance? Is it intent to induce someone to act? In other words, these components sort of overlap with each other, but the strongly favor language stood out to me as one that sets a reasonably high bar that you have to clear. It is, and I would point out, just beginning, that this is at the 12B6 dismissal stage. It's hard to view the whole picture and decide what level you're at, but as I read through the case. Well, I've asked you the questions at the beginning about do you allege. I mean, I appreciate the posture, but at this moment, at least, you're not alleging like a wide-scale scheme or even intentional conduct as opposed to. Blumker and Paul and the other cases which I've seen seem to rely very heavily on whether or not the participant could calculate his benefit, something which Ford has admitted he could not do, that he was in the dark, and that is the primary factor that keeps Betty bedshed, along with minor other factors to bolster that, the size, the length of time that occurred between starting the pension and how much time and reliance so that whether you can go back and correct this situation because it only occurred two or four months ago. All of those kind of factors come into play under extraordinary circumstances, and when you compare Konefsky's case with Blumker and the language that the court used in finding that extraordinary circumstances existed, it's exactly the same. He couldn't calculate his benefit. This is a huge amount of money. Thank you. Good morning, and may it please the Court. I'm Carl Nelson for the appellee and the defendant below, Ford Motor Company General Retirement Plan. I'd like to start by taking a crack at Judge Murphy's question because I agree that I think the way you frame that is the essence of the party's dispute here over that third factor in the estoppel test. I want to do that with the placeholder that, as we've briefed, we believe that the complaint was deficient with regard to other elements. I mean, Judge Radler, I think, correctly pointed out the extraordinary circumstances element. Judge Moore at least touched on the knowledge by the party making the representation, both of which we think are deficient here. But, Judge Murphy, to try to address your question, and unfortunately my answer is going to have several parts, so I sort of beg the Court's indulgement. I think that in the first instance, we have to go back to the language in Blumker. Everyone seems to sort of be in agreement that Blumker is sort of the genesis of this test that we're applying. And in Blumker, that third factor that's at issue is defined as an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended. What appellants, I think, are arguing for here is not a standard that turns on the intention on the party making the representation, in the case of the plan, the intention that the party hearing the representation act, but rather a generalized knowledge on the part of the plan that the participant, in this case Mr. Konevsky, may take some indeterminate, undefined action on the basis of the representation. And that's not the standard in Blumker. The standard in Blumker speaks specifically to an intent that the party receiving the statement will act. I'll just cut you off. I wouldn't read Blumker like a statute. It's setting forth a common law test. I find the third element ambiguous. If you trace it back, it goes to a Ninth Circuit case and then a few other Ninth Circuit cases and then to California law. So I think that the question is open between a general intent that they just, on the part of the party making the statement that the other side will rely or can't rely, and a kind of a specific intent to persuade that party to take a specific action. And if traditional principles of equitable estoppel require that more specific intent to take a particular action, I'm with you. But I'm not certain. I'm seeing it in, like, equitable treatises. And I think at day's end, we are interpreting a 1970s statute. We're interpreting the word equitable in ERISA. And what's the best case that suggests, as a common law matter, this word equitable? I think Blumkin clearly says it includes equitable estoppel, but that equitable estoppel would have included the kind of specific intent requirement that the district court adopted. So, as I warned the court, my answer was going to have multiple points. Okay. That's the key point for me. And I understand. I will say that while obviously the court is correct that we're not interpreting a statute here, we are trying to stay true to this court's precedent and to the language that this court has defined for this cause of action. But to try to better or further answer your question, Judge Murphy, I think there are several problems with the appellant's proposed approach that preclude it, I'll say. First being that if the intent element of their claim simply means this sort of statement on which the appellant could rely or did rely, then that intent element becomes subsumed into the separate element of this claim of reliance. And any time a party relies on the statement, they will almost by definition have- the party hearing the statement. Right. So the party hearing the statement has to have subjectively relied, and the circumstances have to make it objectively reasonable for them to have relied. But what I think this intent is getting at is the party making this statement intends for the other side to rely. So it's about the speaker rather than the hearer. It seems to me reliance is about the hearer. The intent element we're talking about now is about the speaker. And so I don't know that it would render it superfluous because you can still have just this general intent. And to push a little bit further, why isn't there clearly an intent on the part of Ford, the party to be estopped, that their representation will be acted on, at least for purposes of pleading? Well, Your Honor, I'd say there are several reasons. One is because, as I think the Court noted earlier, the benefits estimate form that the Konevskys point to, throughout the form in multiple places pointed out that it was an estimate. It warned the Konevskys that it was an estimate that could be corrected, and the Konevskys actually signed a certification at the end of the form acknowledging that- Well, Your Honor, weren't there like four versions of the estimate that kept recalculating it? There was one version of the form, the written form. There were several discussions around the estimate. Yeah, there were different discussions around the estimate. In each case, the administrator, a third-party administrator, was looking at the data provided in the system. And as we've discussed, and as counsel, I think, would agree, or at least doesn't disagree with, the problem was that the data, there was a bad link. It wasn't linking to his U.K. benefit service. But if we're looking at Blumker, which sets up these eight factors, one of which is intention on the part of the party to be estopped, Ford, that the representation be acted on, your answer to me is basically saying Ford can insulate itself from any equitable estoppel claim by simply saying whenever it gives estimates and then acts on those estimates, oh, but we don't really intend for you to rely on this because we reserve the right to recalculate it at any time. Well, Your Honor, I'm not suggesting that that would absolve, in every circumstance, in any case, a plan from responsibility here. Well, how would you set aside the situation? I mean, this is a pretty blatant mistake on the part of Ford in terms of the calculation method and the calculation amount. Well, what this Court has kind of repeatedly said, and I think, Your Honor, if I remember correctly, which opinion was it? I have written in this area, yes. The one that you wrote in specifically acknowledges that the guiding principle when you're dealing with ERISA plans is that they be administered consistently according to their written terms. That's the overarching obligation of the administrators. Now, the Court has recognized that in narrow, specific circumstances with a relatively high bar, the written plan terms can be overcome if there's a showing of all of the necessary elements of equitable estoppel. But that's a high bar, and there's a reason for that, because of the importance of administering the plan according to its terms. The plan is to be administered for the common good of all participants. You don't get to play favorites, and you need to preserve. When does it no longer become an estimate? So it's not just the facts that they relied on. Why wasn't it enough to rely on two years of payments? Is it your view that it's an estimate, not just when you receive the letter showing you the options? I thought it was an estimate, and then there's a 90-day period that you can fix it. But after that 90-day period, it becomes locked in. Am I wrong? Go ahead. I'm sorry, please. Well, I was going to say, under your view, is it always an estimate? So imagine if you caught this error 20 years later instead of two years later, and he's now 78 instead of 58. Obviously, it's going to be very difficult to work. And he doesn't have the money to pay it back. Correct, because it was a much longer lump sum. Under your view, it was just an all-in estimate, and he'd be on the hook for that? Well, again, those aren't the facts in front of us. We know. But I would answer that in two ways. The first part is, again, unless the elements of the specific exception are shown, the terms of the plan have to govern here. And the plan specifically says, and the acknowledgments that Konevsky signed specifically say, that if an error is discovered at any time, it will be corrected. What's your answer, buddy? Yes, they have to pay back the money. Well, no, not necessarily, because, again, with the passage of time, there may be different circumstances. There may be an ability to show all of the elements of the estoppel claim. There may also be the plan includes language that grants the administrator discretion to vary from the term plans under appropriate circumstances. It's a discretionary decision on the part of the plan. That was not invoked here. It's not before this Court. There's no argument or claim here that there was an abuse of discretion by the fiduciary in not forgiving the. What's the explanation for why two years later you figured out that you were overpaying? Judge Raylard, it was actually about less than a year and a half later. Now, he had received two years' worth of benefits because there was back pay. You can quibble with every small detail, but there was a significant amount of time that passed. There were multiple estimates. I think this is a very hard case. I think there are problems with both sides' arguments. But the biggest problem I see is that the multiple estimates and the payments happened for some period of time. So what was the reason why you discovered there was an overpayment? How did you discover there was an overpayment? The plan periodically audits its results. And less than a year and a half after it started paying Mr. Konefsky and his wife, one of those audits was conducted, and it was determined that there was this computer error that didn't take into account his benefit service time in the U.K. Does this affect more than just Mr. Konefsky? There was no evidence that it affected anybody else. Not much evidence at all yet? Well, no, but there's no allegation, and I can tell you that there's no indication that it affected anyone else. This is a motion to dismiss, right, based on the? Correct. I'm sort of curious why you don't focus on the second factor under Blumker, awareness of the true facts by the party to be estopped. You are the party to be estopped for. It is the party to be estopped. Why aren't you arguing that the district judge should have focused on no allegation in the complaint, if that's the case, that Ford knew these overpayments until it actually acted? That was an argument that was fully briefed before the district court. Given equal attention to element three, the district court found that it didn't need to reach that argument or the arguments about exceptional circumstances or the other arguments because it found that the complaint was deficient with regard to element three. We've also briefed that issue, knowledge, to this court, and obviously as this court is aware and as it's done in other ERISA cases like this, it can affirm the district court's decision on any grounds that are appropriate. But the district court chose to focus its decision on the intent. Actual knowledge, though, has been interpreted to mean just gross negligence, right? It has. Those things are kind of inconsistent to me, but that aside. Why wouldn't it be plausibly pleaded gross negligence? I mean, it's Twombly, so it's just plausibility that you intentionally delayed for four months because you knew the reconciliation of the U.K. and U.S. plans, so you had four different inquiries, and then it took two years to discover that. It doesn't seem implausible to me that that could rise to the level of gross negligence. Well, as the court noted, there's no specific allegation in the complaint about gross negligence. This is a new sort of theory. They just need to plead facts at the pleading stage. Sure. And I would say, first of all, the facts as pled don't rise to the level of gross negligence. And secondly, sort of just in context here, I think it's important to remember that this is an enormous retirement plan with tens of thousands of current and former employee participants and beneficiaries. This plan engages in literally millions of transactions. And so, unfortunately, despite all of the efforts that are made, errors are going to creep in. Things will happen with that magnitude of transactions. And there's no indication, no evidence, and certainly no allegations in the complaint that this was anything other than one of those unfortunate, but given the scale, unavoidable errors that will happen from time to time. As soon as the plan conducted the audit and found the error, it notified the Konevskys, and immediately attempted to rectify that error going forward. It's unfortunate, obviously, that something like a year and a half passed between the time they started their benefits and the time that the error was corrected. But again, the plan has an obligation to be administered by its terms. And here, there's been inadequate showing that there's any reason, or pleading, I will say, for the plan to depart from those terms which they were very clear with the Konevskys would govern in this circumstance. Thank you. Thank you.  I'd like to expand a little bit on Judge Murphy's question about intent. And your comment that you are considering how equitable estoppel should be applied under a 1974 law, ERISA. And ERISA, at least on this subject, tells you specifically that ERISA states as one of its purposes is providing benefit information to participants because it's important that they know what those benefits amounts are in order to plan their retirement, their financial security in retirement. So if you're looking at ERISA and how equitable estoppel should be applied under ERISA, Congress has given you some direction on how that should be done. In terms of Mr. Delson's comment that they immediately rectified the error, they immediately rectified the error by throwing all of the effects of it and all of the damage of their error upon Mr. Konevsky. They didn't rectify it by putting him back at the place where he was when he made the decision based on their information. You don't have any argument that you're entitled to $6,000, do you? You don't think you're actually entitled to $6,000 per month, right? Under the plan, he is not entitled. As the plan is written, he's entitled to the smaller benefits they reduced it to. He is entitled to be made whole for the damages he suffered. So what exactly would he be entitled to then? That's a good question. In all of the cases up to now, it has simply been restate the larger amount and go forward. But I can't understand how a court could look at this and say, Mr. Konevsky could be made whole with something less than just simply returning. Or it may say that it's just too difficult to figure out any other solution but to do that. Does your client want to be returned to the workforce at Ford? Not at Ford. He was being laid off. He did lose two years in his job search. What the error was discovered, we were in the midst of COVID, and he found it extremely difficult to look for another job. He has gone back to work for some short periods of time in order to attempt to rectify this. But he had been laid off by Ford. Returning him to his previous situation would not mean him going to be rehired by Ford. It would be making up for that two and a half years or the extension of that due to COVID that he was not looking for a job. Can I ask one question? Yes, sure. So the statute, am I correct that you're suing under the cause of action that says you can sue to obtain other appropriate equitable relief? Correct. You know, it goes on to say other appropriate equitable relief to address such violations, by which I think it means violations of ERISA, or to enforce any provisions of this chapter or the terms of the plan. And I was curious, have you thought about, is it a violation you're alleging, like a violation of the ERISA provisions on disclosure? But it seems to me that the cause of action might require you to show a violation of ERISA. Well, Blomker, Paul, and the cases on equitable estoppel have not required that. It didn't occur to me to include that. But certainly it's our position that within the requirement to provide benefit statements to participants and give them statements under the plan, require them to make a choice of what benefit they're going to get off of the list which they have given them, that there is a responsibility under ERISA to provide accurate information. Thank you both. The case will be submitted, and the clerk may call the next case. Thank you.